JUDGE HELLERSTEIN

13 CV 2272

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JOSEPH SCIDDURLO,                          :    **DOCKET NO.:**

                                           :
                          Plaintiff,       :    **COMPLAINT**
        -against-                          :
                                           :    RECEIVED APR 0 5 2013 U.S.D.C. S.D.N.Y.
                                           :
THE FINANCIAL INDUSTRY REGULATORY          :    PLAINTIFF DEMANDS
AUTHORITY and RICHARD KETCHUM              :    TRIAL BY JURY
                          Defendant.
------------------------------------------------------------------x

Plaintiff, Joseph Sciddurlo, by his attorney, CARA BUONINCOUNTRI and trial counsel, SCIRETTA & VENTERINA, LLP, for his Complaint against The Financial Industry Regulatory Authority, Inc. ("hereinafter FINRA") and Richard Ketchum, alleges as follows:

### THE PARTIES

1.  Plaintiff, Joseph Sciddurlo, currently resides at 508 Oakland Avenue, Staten Island, New York. He is 58 years of age, and was employed by Defendant, FINRA, from on or about May 21, 2007 to May 17, 2011. During his employment, he was employed as a Level 47 Principal Examiner, and was rated a high contributor, at 165 Broadway, New York, New York 10006.

2.  Defendant, the Financial Industry Regulatory Authority, Inc. ("FINRA") is a private non-profit organization with its principal place of business located at 1735 K Street NW, Washington, D.C. 20006. It is a self-regulator of securities firms doing business with the public in the United States. FINRA creates and enforces rules for

1

members based on federal securities laws. FINRA is overseen by the Securities and Exchange Commission (SEC).

3. FINRA is the largest independent regulator for all securities firms doing business in the United States. The Securities and Exchange Commission sanctions and/or oversees FINRA

4. The defendant, RICHARD KETCHUM, is the Chairman and Chief Executive Officer, of the defendant, FINRA, whose function is to operate, manage and oversee the operation and management of FINRA.

5. At all times relevant to this Complaint, plaintiff was employed at FINRA's New York district office, located at 165 Broadway, New York, NY 10006-1400.

## THE NATURE OF THE ACTION

6. This is a civil action for damages and remedies brought under the New York State Whistleblower Laws, as codified Labor Law §740 & Civil Service Law §75-b, Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634 ("ADEA"), the New York State Executive Law § 296 et seq. ("New York State Human Rights Law"); the Administrative Code of the City of New York § 8-101 et seq. ("New York City Human Rights Law"); and the Dodd-Frank Act as codified 15 U.S.C. Sec, 78u-6.

2

## JURISDICTION & VENUE

7. This Court has jurisdiction over this action under 28 U.S.C. § 1331. The plaintiff demands a trial by jury.

8. Venue is proper in this district under 28 U.S.C. § 1391 (b).

## FACTS

9. Having an MBA in Accounting, Plaintiff was originally hired on or about May 2007 as a Financial Examiner. In 2008 he was promoted to a Level 47 Principal Examiner with FINRA and for FINRA's New York Region. Until his termination of employment, effective May 17, 2011, he remained in that position. During his employment at FINRA he received excellent evaluations and was rated a "high contributor".

10. Throughout Plaintiff's employment with FINRA, he was qualified for his position and performed his duties and responsibilities in a professional and competent manner.

11. Plaintiff's performance reviews throughout his employment were positive. He received high performance ratings each year based on reviews of his supervisors, Jeffrey Pasquerella, Hans Reich, and others. Over the years, the plaintiff's evaluations were impeccable. He was started as a Financial Examiner in 2007, and was promoted to a Principal Examiner in 2008 and was rated as a "high contributor". He received the second highest ranking, number 4 for "High Contributor" in years 2008 and 2009.

12. In 2010, plaintiff detected a flaw in the FINRA system, which allowed larger broker dealers to be over leveraged. Pursuant to SEC rule 15c3-1(a)(1) a broker-dealer's leverage could not exceed fifteen times its net capital. Even though the SEC rules also allow broker-dealers with net capital of greater than $250,000 to be exempt from that regulation if their net capital exceeds 2% of customer receivables, from a rational and analytical perspective, a flaw was found to exist by the plaintiff for all broker-dealers filing under the Alternative Method of Net Capital, that would allow them to circumvent the SEC leverage limit of fifteen times the net capital and would allow large firms to leverage as much as they wanted.

13. In 2010, plaintiff was commended for his financial expertise and asked to design a better risk rating methodology with respect to brokers-dealers. Therefore, in the later part of 2010, the plaintiff devised and completed the CAMELS project, which would prevent such improper leveraging in the future and would therefore prevent additional financial crises, and bankruptcies which had occurred in the past resulting from large broker-dealer firms getting around the SEC leverage restrictions by filing under the Alternative Method of Net Capital. Further, plaintiff recommended a "quality of earnings" check, which would raise a red flag on the Examiner's Annual Audit Worksheet, whenever a broker-dealer's cash flow from operations is less than 50% of reported net income to prevent a re-occurrence of certain bankruptcies that had occurred in the past.

14. The plaintiff detected the flaw in the FINRA system which allowed large broker dealer firms to have improper leveraging, thereby blatantly circumventing the SEC leverage limit of fifteen times net capital for broker dealers, and allowing large firms to leverage as much as they wanted. However, though lauded by his superiors, executives at FINRA had no desire or intention of correcting this flaw, which permitted broker dealers to circumvent SEC guidelines. While initially being praised by his superiors, the plaintiff was suddenly and without justification downgraded from the status of a Level 4 "high contributor" to a Level 3, "solid contributor".

15. In addition to high performance rating numbers, Plaintiff's supervisors consistently praised the quality of his work. Over the years, the plaintiff was continually praised for his excellent performance. Plaintiff was described as "having tremendous financial expertise" by his FINRA superiors on his Performance Appraisal in 2009. Plaintiff also consistently received raises and bonuses.

16. Upon being downgraded to a solid contributor and in February of 2011, the plaintiff requested to be transferred to the Cycle Department at FINRA, since he had taken the initiative to pass the "Securities Fraud" course offered by the Association of Certified Fraud Examiners which makes Examiners more proficient in detecting Ponzi schemes. FINRA has been criticized for missing the massive multi million and billion dollar Ponzi schemes.

17. The plaintiff was without justification denied a transfer to the Cycle Department in February of 2011, even though FINRA Human Resource Department had assured the plaintiff that as a "Solid Contributor" he was allowed to transfer positions.

18.  In early 2011, the plaintiff was also warned by his superiors to stop using CAMELS or "Cash Flow Analysis" even though his "Cash Flow Analysis" correctly predicted the demise of a large broker-dealer in 2008.

19.  In April of 2011, and without any legitimate basis, the plaintiff was placed on probation, despite his excellent performance, evaluations and years of service to FINRA. On May 17, 2011, FINRA terminated Plaintiff's employment.

20.  That the plaintiff's pension was due to vest on or about May of 2012 and after five years of employment with FINRA.

21.  However, on May 17, 2011 and one year prior to his pension vesting, the plaintiff was terminated.

22.  That in addition to plaintiff, other older individuals at FINRA, including Hans Reich, was also fired. Hans Reich was replaced with younger and less experienced personnel.

23.  That plaintiff received good performance reviews and evaluations from his supervisors, but plaintiff was still terminated and individuals at FINRA refused to provide any legitimate basis for termination, other than false claims that plaintiff's performance was somehow not adequate.

24.  That the plaintiff's evaluation changed in that his performance was downgraded from a "high contributor" to a "solid contributor", without justification.

25.    Upon information and belief, the lower ranking implies that based on the plaintiff's age, he was somehow no longer a "high contributor", but was somehow slacking as a result of his age, when in fact that plaintiff's performance never changed, and if anything, had continued to excel.

26.    That the plaintiff's superior, Hans Reich, was replaced with a younger individual in his 40's.

27.    That plaintiff's performance was downgraded and/or his responsibilities e was

28.    Plaintiff's employment officially ended on May 17, 2011.

### AS AND FOR A FIRST CAUSE OF ACTION BASED ON AGE DISCRIMINATION BASED ON VIOLATION OF ADEA

29.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 28 as if separately set forth herein.

30.    At all relevant times, Plaintiff was an "employee" under the ADEA, 29 U.S.C. § 630(f).

31.    At all relevant times, FINRA was an "employer" under the ADEA, 29 U.S.C. § 630(b).

32.    By its actions detailed above, FINRA unlawfully discriminated against Plaintiff on the basis of his age in violation of the ADEA.

33. By reason of the foregoing, Plaintiff suffered economic damage, including loss of salary, loss of benefits, loss of a pension and/or other economic loss, and has suffered emotional pain and anguish and/or has suffered damage to his reputation, and demands judgment in the amount of $25,000,000.

34. FINRA's conduct was willful, entitling Plaintiff to liquidated damages and/or punitive damages pursuant to 29 U.S.C. § 626 (b).

## AS AND FOR A SECOND CAUSE OF ACTION BASED UPON AGE DISCRIMINATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

35. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 34, as if separately set forth herein.

36. At all relevant times, Plaintiff was an "employee" for purposes of § 296 of the New York State Human Rights Law.

37. Defendant is an "employer" for purposes of § 292 of the New York State Human Rights Law.

38. By its actions set forth above, Defendant unlawfully discriminated against Plaintiff on the basis of his age in violation of the New York State Human Rights Law.

39. By reason of the foregoing, Plaintiff suffered economic damage, including loss of salary, loss of benefits, loss of a pension and/or other economic loss, and has suffered emotional pain and mental anguish, and/or has suffered damage to his reputation and demands judgment in the sum of $25,000,000.

## AS AND FOR A THIRD CAUSE OF ACTION BASED ON AGE DISCRIMINATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

40. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 39, as if separately set forth herein.

41. Plaintiff is a "person" under § 8-102(1) of the New York City Human Rights Law.

42. Defendant is an "employer" for purposes of the New York Human Rights Law under New York City Administrative Code § 8-102(5).

43. By its actions set forth above Defendants unlawfully discriminated against Plaintiff on the basis of his age in violation of the New York City Human Rights Law.

44. By reason of the foregoing, Plaintiff suffered economic damage, including loss of salary, loss of benefits, loss of a pension and/or other economic loss, and has suffered emotional pain and mental anguish and/or has suffered damage to his reputation.

45. Based upon the foregoing, the plaintiff demands judgment in the sum of $25,000,000.

46. Defendant's discriminatory conduct was taken with reckless indifference to Plaintiff's rights, entitling him to punitive damages under the New York Human Rights Law.

## AS AND FOR A FOURTH CAUSE OF ACTION BASED ON VIOLATION OF NEW YORK STATE LABOR LAW §740

47. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 46, as if separately set forth herein.

48. As previously set forth, the plaintiff had found a significant problem and/or loophole in the FINRA system, whereby large broker dealers could circumvent the SEC leveraging regulations.

49. In 2010, plaintiff detected the flaw in the FINRA system, which allowed larger broker dealers to be over leveraged. The flaw was found to be present for all broker dealers filing under the Alternative Method of Net Capital, and would allow them to circumvent the SEC leverage limit of 15 times the net capital and would allow large firms to leverage as much as they wanted. The plaintiff authored the CAMELS project, which would in the future prevent such improper leveraging and resultant financial crisis, problems, and bankruptcies as had occurred in the past due to large broker-dealer firms getting around the SEC leverage restrictions by filing under the Alternative Method of Net Capital.

50. After the plaintiff detected the flaw in FINRA's system which allowed large broker dealer firms to have improper leveraging, thereby blatantly circumventing the SEC leverage limit of 15 times net capital for broker dealers, and allowing large firms to leverage as much as they wanted, the plaintiff sought to disclose same and correct the flaw.

51. When plaintiff brought this flaw to the attention of his superiors and/or when plaintiff sought to disclose the flaw in the FINRA system, which allowed large brokerage firms to circumvent SEC leverage guidelines, his status was downgraded from a Level 4, "High Contributor" to a Level 3, "Solid Contributor".

52. After downgrading plaintiff's status, he was placed on probation and terminated on May 17, 2011.

53. That at all times, the plaintiff was an employee within the meaning of NYS Labor Law §740.

54. That at all times, the defendant was an employer within the meaning of NYS Labor Law §740.

55. That the plaintiff disclosed to his supervisors and/or personnel at FINRA that its policies and/or procedures and/or practices permit larger broker dealer firms filing under the Alternative Method of Net Capital, to circumvent the SEC regulations which limit leverage to 15 times the net capital and would allow large firms to leverage as much as they wanted.

56. That the plaintiff threatened to disclose to other regulatory authorities and to the general public that FINRA policies and/or procedures and/or practices permit larger broker dealer firms filing under the Alternative Method of Net Capital, to circumvent the SEC regulations which limit leverage to 15 times the net capital and would allow large firms to leverage as much as they wanted.

57. Shortly thereafter, the plaintiff was downgraded, placed on probation and terminated on May 17, 2011.

58. That based upon the foregoing, the defendants took retaliatory action against the plaintiff for his disclosure and/or threatened disclosure of FINRA policies which circumvented SEC regulations and which posed a threat to the general public and/or a threat to investors of large firms who are improperly leveraged.

59. That such conduct was in violation of the NYS Labor Law §740.

60. By reason of the foregoing, Plaintiff suffered economic damage, including loss of salary, loss of benefits, loss of a pension and/or other economic loss, and has suffered emotional pain and mental anguish and/or damage to his reputation.

61. That as a result thereof, the plaintiff suffered lost wages and earnings, loss of future earnings, loss of benefits, economic loss, costs, disbursements and attorneys' fees.

63. That as a result of the foregoing, the plaintiff has been damaged and seeks judgment in the amount of $25,000,000.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR WRONGFUL TERMINATION

64. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 63, as if separately set forth herein.

65. That as aforesaid, the plaintiff was improperly and/or illegally discriminated against and/or fired based upon his age.

66. That as aforesaid, the plaintiff was improperly and/or illegally terminated and/or terminated in retaliation for his role in attempting to correct the FINRA policies and/or procedures and/or practices that permit larger broker dealer firms filing under the Alternative Method of Net Capital, and which allowed them to circumvent the SEC regulations which limit leverage to 15 times the net capital, which had in the past resulted in extreme financial difficulties, bankruptcies and damage to the general public.

67. That based on the foregoing, the plaintiff was wrongfully fired and/or wrongfully discharged on May 17, 2011.

68. That the plaintiff was not terminated for a legitimate reason and was terminated on the basis of his age.

69. That the plaintiff was not terminated for a legitimate reason, but was terminated in retaliation for his honorable attempts to correct the FINRA policies and/or procedures and/or practices that permit larger broker dealer firms filing under the Alternative Method of Net Capital, and which allowed them to circumvent the SEC regulations which limit leverage to 15 times the net capital.

70. By reason of the foregoing, Plaintiff suffered economic damage, including loss of salary, loss of benefits, loss of a pension and/or other economic loss, and/or has suffered emotional pain and anguish and/or damage to his reputation.

71. That by reason of the foregoing, Plaintiff has been damaged and demands judgment against the defendants in the sum of $25,000,000.

## AS AND FOR A SIXTH CAUSE OF ACTION

72. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 71, as if separately set forth herein.

73. That as previously set forth herein, the plaintiff was wrongfully terminated.

74. That the plaintiff's pension was due to vest after he was duly employed for a period of five years.

75. That the plaintiff was terminated and/or wrongfully terminated after four years of employment, which termination was wholly and/or partially motivated in an attempt to deprive him of his pension and/or benefits.

76. That based on the foregoing, the plaintiff was wrongfully fired and/or wrongfully discharged on May 17, 2011.

77. By reason of the foregoing, Plaintiff suffered economic damage, including loss of salary, loss of benefits, loss of a pension and/or other economic loss, and/or has suffered emotional pain and mental anguish and/or damage to his reputation.

78. By reason of the foregoing, Plaintiff has been damaged and demands judgment against the defendants in the sum of $25,000,000.

## AS AND FOR A SEVENTH CAUSE OF ACTION

79. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 78, as if separately set forth herein.

80. Pursuant to the Dodd-Frank Act, no employer may discharge, demote, suspend, threaten, harass or in any manner discriminate against an employee for any lawful act when said employee provides information pertaining SEC violations or makes certain protected disclosures.

81. That the plaintiff is a whistleblower as defined by the Dodd-Frank Act.

82. That the plaintiff reported to FINRA, that the FINRA policies and/or procedures and/or practices that permit larger broker dealer firms filing under the Alternative Method of Net Capital, and which allowed them to circumvent the SEC regulations which limit leverage to 15 times the net capital.

83. That the plaintiff devised and completed the CAMELS project, which would prevent such improper leveraging in the future and would therefore prevent additional financial crises, and bankruptcies which had occurred in the past resulting from large broker-dealer firms getting around the SEC leverage restrictions by filing under the Alternative Method of Net Capital. Further, plaintiff recommended a "quality of earnings" check, which would raise a red flag on the Examiner's Annual Audit Worksheet, whenever a broker-dealer's cash flow from operations is less than 50% of reported net income to prevent a re-occurrence of certain bankruptcies that had occurred in the past.

84. That FINRA, like the SEC, is a regulatory agency, which is specifically overseen by the SEC.

85. That by making such disclosures and/or complaints to FINRA, was essentially the same as reporting same to the SEC.

86. That plaintiff was thereafter downgraded to a solid contributor, he was without justification denied a transfer to the Cycle Department in February of 2011, he was placed on probation in April of 2011 without any legitimate basis, and he was ultimately terminated on May 17, 2011.

87. That based on the foregoing, the defendants violated the Dodd-Frank Act, in that FINRA discharged, demoted, harassed, threatened, suspended and/or discriminated against the plaintiff based upon his disclosure of certain information.

88. That by making such disclosures to representatives of FINRA, the plaintiff engaged in protected activity under the Dodd-Frank Act.

89. That after the plaintiff made such disclosures, he was subjected to demotions, probation, increased scrutiny, retaliation and/or firing from his employer, FINRA.

90. For such retaliation in violation of the Dodd-Frank Act, the plaintiff is entitled to all relief permitted, both legal and equitable, pursuant to said statute, including, but not limited to monetary relief, compensatory damages, double back pay with interest, lost wages, costs and attorneys' fees, and reinstatement of employment.

91. By reason of the foregoing, Plaintiff suffered economic damage, including loss of salary, loss of benefits, loss of a pension and/or other economic loss, and/or has suffered emotional pain and mental anguish and damage to his reputation.

92. By reason of the foregoing, Plaintiff has been damaged and demands judgment against the defendants in the sum of $25,000,000, together with all other damages permitted under said act allowable by law.

WHEREFORE, while reserving the right to seek additional damages as available, Plaintiff demands judgment against Defendant as follows:

On the First Cause of Action, in an amount of twenty five million dollars and for costs, disbursements and attorneys fees, with interest; on the Second Cause of Action, in an amount of twenty five million dollars and for costs, disbursements and attorneys fees, with interest; on the Third Cause of Action, in an amount of twenty five million dollars and for costs, disbursements and attorneys fees, with interest; on the Fourth Cause of Action, in an amount of twenty five million dollars and for costs, disbursements and attorneys fees, with interest; and on the Fifth Cause of Action, in an amount of twenty five million dollars and for costs, disbursements and attorneys fees, with interest; on the Sixth Cause of Action, in an amount of twenty five million dollars and for costs, disbursements and attorneys fees, with interest; on the Seventh Cause of Action, in an amount of twenty five million dollars and for costs, disbursements and attorneys' fees, with interest; and/or for Punitive and/or Excess and/or Double or Treble damages in those causes of action where permissible and/or such equitable relief as is deemed just and proper.

Dated:  Richmond, New York
        April 3, 2013

Yours, etc.
SCIRETTA & VENTERINA, LLP
Trial Counsel to
CARA BUONINCOUNTRI, ESQ.
Attorneys for Plaintiff
26 Park Court
Staten Island, New York

By: _____
      Marilyn Venterina

17

# VERIFICATION

STATE OF NEW YORK          )
                           ) s.s.:
COUNTY OF RICHMOND   )

JOSEPH SCIDDURLO,, being duly sworn, deposes and says:

That he has read the foregoing COMPLAINT and knows the contents hereof; that the same is true to his knowledge upon information and belief, and that as to those matters he believes them to be true.

*/s/ Joseph Scidurlo*
JOSEPH SCIDDURLO

Sworn to before me this

5th day of April, 2013.

*/s/ Cara Buonincontri*
Notary Public

CARA BUONINCONTRI
Notary Public, State of NY
ID. C_____
Qualified in Richmond Cty.
Commission Expires December 17, 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPH SCIDDURLO,                                :

                                                 :

                    Plaintiff,

                                                 :

        -against-

                                                 :

THE FINANCIAL INDUSTRY REGULATORY
AUTHORITY and RICHARD KETCHUM
        :
                    Defendants.

---

# COMPLAINT

---

        SCIRETTA & VENTERINA, LLP
        Trial Counsel to CARA BUONINCOUNTRI, ESQ.
        Attorneys for the Plaintiff
        26 Park Court
        Staten Island, New York 10301
        Phone No.: 718-783-4545